IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION NO. 14-2713 |
| | : | |
| v. | : | |
| | : | |
| THEODORE MCFADDEN, SR. | : | CRIMINAL NO. 10-663-2 |

### MEMORANDUM

**Padova, J.**                                                                                                     **July 29, 2014**

Before the Court is Theodore McFadden, Sr.'s *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, seeking to vacate his sentence of 90 months imprisonment. The Government has filed a Motion to Dismiss McFadden's § 2255 Motion on the ground that McFadden waived his right to bring a § 2255 Motion in his Guilty Plea Agreement. For the following reasons, we grant the Government's Motion and dismiss McFadden's § 2255 Motion.[1]

**I.     BACKGROUND**

On November 16, 2011, McFadden pled guilty to Counts 1, 2, 3 and 5 of Second Superseding Indictment No. 10-663, which charged him with one count of conspiracy to

---

[1] McFadden has requested that we appoint counsel to represent him in connection with the instant § 2255 Motion. "There is no 'automatic' constitutional right to counsel in a federal habeas corpus proceeding." Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991) (citation omitted). However, we may appoint counsel for a financially eligible person who is seeking relief under § 2255 if "the interests of justice so require." 18 U.S.C. § 3006(a)(2)(B); see also 28 U.S.C. § 2255(g). Consequently, we may appoint counsel "where a *pro se* prisoner in a habeas action has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim." Jones v. Bickell, Civ. A. No. 13-1008, 2014 WL 2547788, at *12 (E.D. Pa. June 6, 2014) (citing Reese, 946 F.3d at 263-64). In making our determination, we consider "whether the claims raised are frivolous, the complexity of the factual and legal issues, and if appointment of counsel will benefit the petitioner and the court." Id. (citing Reese, 946 F.2d at 263–64). We have considered these factors and conclude that McFadden's claims are frivolous, the factual and legal issues before us are not complex, and the appointment of counsel would not benefit McFadden or the court. McFadden's request for appointment of counsel is, accordingly, denied.

distribute five kilograms or more of cocaine between May 2007 and June 2008, in violation of 21 U.S.C. § 846 (Count One); one count of attempted possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (Count Two); one count of unlawful use of a communications facility in committing, causing and facilitating a felony, in violation of 21 U.S.C. § 843(b) (Count Three); and one count of conspiracy to distribute five kilograms or more of cocaine between 1986 and November 16, 2007, in violation of 21 U.S.C § 846 (Count Five). The charges against McFadden arose from his participation in a drug trafficking conspiracy that dated back to 1986 and was centered in the Frankford section of Philadelphia, Pennsylvania.

McFadden pled guilty pursuant to a Guilty Plea Agreement. He stipulated in the Guilty Plea Agreement that eight kilograms of cocaine were possessed or distributed in furtherance of the drug trafficking conspiracy, that this amount was reasonably foreseeable to him in connection with the conspiracy, and that he should be sentenced based on this amount. (Guilty Plea Agreement ¶ 8(a).) He also waived his rights to appeal and collaterally attack his conviction and sentence. (Id. ¶ 9.) We sentenced McFadden on December 18, 2012 to 90 months of imprisonment, ten years of supervised release, and a special assessment of $400. McFadden asks in his § 2255 Motion that we vacate his sentence of imprisonment because he did not receive sufficient credit for time served in a related case in the State of California.[2]

---

[2] On May 27, 2008, McFadden was arrested and charged with transporting or selling narcotics and possession of money from the sale of narcotics in the Los Angeles, California Superior Court. He pled guilty to those charges and was sentenced to five years of imprisonment. He served 32 months at Avenal State Prison in California before he was paroled on February 19, 2011 and transported to the Eastern District of Pennsylvania in connection with the instant case. (See California Department of Corrections and Rehabilitation Calculation Worksheet; PSI ¶ 142; Def.'s Sentencing Mem. at 1.)

**II.   LEGAL STANDARD**

The Government has moved to dismiss McFadden's § 2255 Motion on the ground that he waived his right to collaterally attack his sentence in his Guilty Plea Agreement. The United States Court of Appeals for the Third Circuit has held that a defendant's waiver of appellate or collateral attack rights is enforceable provided that (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008)); see also United States v. Kinard, -- F. App'x --, 2014 WL 1363995, at *2 (3d Cir. Apr. 8, 2014) (noting that an appellate or collateral attack waiver should be enforced "when: (1) the defendant knowingly and voluntarily agreed to the waiver; and (2) the issues on appeal fall within the scope of the waiver, except when doing so would work a miscarriage of justice" (citing United States v. Saferstein, 673 F.3d 237, 241-42 (3d Cir. 2012))).

**III.   DISCUSSION**

    A.   <u>Knowing and Voluntary Waiver</u>

We first "consider whether there is record evidence that [McFadden] knowingly and voluntarily signed the waiver." United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007). In making this determination, we look to the language of the waiver and to the guilty plea colloquy. See United States v. Mabry, 536 F.3d 231, 238 (3d Cir. 2008) (citing Gwinnett, 483 F.3d at 203-04).

McFadden's Guilty Plea Agreement provides that:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18

> U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

(Guilty Plea Agreement ¶ 9.) The Guilty Plea Agreement also states that McFadden "acknowledges his waiver of rights" (id. ¶ 1), and that he and his "lawyer have fully discussed this plea agreement" (id. ¶ 11). McFadden signed the Guilty Plea Agreement on November 16, 2011.

Prior to accepting McFadden's guilty plea, we conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11, which provides as follows:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . . .
>
> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence . . . .

Fed. R. Crim. P. 11(b)(1); see also Gwinnett, 483 F.3d at 204. During the plea colloquy, we placed McFadden under oath and confirmed that he had read the Guilty Plea Agreement and discussed it with his attorney before he signed it. (11/16/11 Hr'g Tr. at 2, 8.) At our request, the Assistant United States Attorney stated the terms of the Guilty Plea Agreement, including McFadden's waiver of his right to appeal or collaterally attack his conviction, sentence or other matters relating to this prosecution. (Id. at 8-12.) McFadden confirmed that the terms stated by the Assistant United States Attorney were the terms of his Guilty Plea Agreement. (Id. at 12.) McFadden also stated that no one had "made any threat or any promise or deal or assurance to [him] of any kind other than what's set forth in the Plea Agreement to convince or to induce [him] to plead guilty in this case." (Id. at 12; see also id. at 26.) We also conducted the following colloquy with McFadden with respect to the waiver:

4

>THE COURT: Now, by pleading guilty, you're giving up your right to appeal from any conviction after trial because there won't be a trial. Ordinarily, the only appeal that you would have from a guilty plea would be if I impose an illegal sentence or if there are any errors in this proceeding or the sentencing proceeding. You have, however, entered into a Plea Agreement and that Plea Agreement does contain what we refer to as an appellate waiver provision which is more narrow generally allowing a defense appeal, that means an appeal by you, only where . . . the Government appeals, the Court imposes a sentence in excess of the statutory maximum and/or the Court imposes an upward departure or a variance from the advisory Guideline range. Now, have you specifically discussed this appellate waiver provision with your lawyer and do you understand it?
>
>Mr. McFadden: Yes, Sir.

(Id. at 16-17.) Following the colloquy, we found that McFadden was competent to plead and that his plea of guilty was knowing and voluntary. (Id. at 29-30.)

We conclude that the Guilty Plea Agreement; McFadden's confirmation that the Assistant United States Attorney accurately stated the terms of his Guilty Plea Agreement during the November 16, 2011 Change of Plea Hearing; and our plea colloquy with McFadden all demonstrate that he was fully informed of his rights, the Government's obligations, and the nature of the appellate and collateral attack waiver. Moreover, McFadden's execution of the Guilty Plea Agreement and his sworn assertion during the November 16, 2011 Hearing that he had read the Guilty Plea Agreement and discussed it with his attorney before he signed it, clearly indicate that he had consulted with his attorney and understood the waiver. Therefore, we conclude that McFadden knowingly and voluntarily entered into the appellate and collateral attack waiver contained in the Guilty Plea Agreement.

B.      Exceptions to the Waiver

Since we have determined that McFadden's waiver of his right to collaterally attack his conviction and sentence was knowing and voluntary, "we next have to determine whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver."

Jackson, 523 F.3d at 244. The waiver provision of McFadden's Guilty Plea Agreement contains the following limitations and exceptions:

> This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
>
>> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 4 above;
>>
>> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or
>>
>> (3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 200 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

(Guilty Plea Agreement ¶ 9.) McFadden does not contend that any of these exceptions apply here, and we perceive no basis for such an argument. McFadden does not assert any non-waiveable constitutional claim, the Government has not appealed, and the instant Motion is not a direct appeal. Moreover, we did not sentence McFadden in excess of the statutory maximum for his offense and we did not depart upward from the applicable Sentencing Guidelines range. Accordingly, we conclude that no specific exception contained in the waiver provision applies in this case.

    C.    <u>Miscarriage of Justice</u>

The last factor we must consider is whether enforcing the waiver would work a miscarriage of justice. Goodson, 544 F.3d at 536 (quoting Jackson, 523 F.3d at 244.). To

evaluate whether enforcement of a waiver would result in a miscarriage of justice, we consider: the "'clarity of the error,'" the gravity of the error, the character of the error, "'the impact of the error on the defendant, the impact of correcting the error on the Government, and the extent to which the defendant acquiesced in the result.'" United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)). However, enforcing a waiver will not work a miscarriage of justice simply because the defendant wishes to assert a meritorious issue:

> by waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the Eleventh Circuit explained:
>
>> "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous. . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded."

Khattak, 273 F.3d at 561-62 (alteration in original) (quoting United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)).

McFadden contends that his sentence in this case should be vacated and that he should be resentenced because he did not receive credit against his sentence in this case for all of the time he served for his related conviction in California. As we mentioned, supra, McFadden served 32 months in prison in connection with his conviction for transporting or selling narcotics and possessing money from the sale of narcotics in Los Angeles, California. (PSI ¶ 142.) At McFadden's sentencing, both his attorney and the Assistant United States Attorney confirmed that he had been imprisoned for 32 months in California in connection with that conviction. (12/18/12 Hr'g Tr. at 33, 36.) For this reason, we departed downward 32 months from what we

7

had determined to be the appropriate Sentencing Guidelines range of 100-125 months, and sentenced McFadden to 90 months imprisonment. (Id. at 36.)

McFadden asserts that he served five years in connection with his California sentence and that he should be given credit for all five years. According to the documents from the California Department of Corrections and Rehabilitation that McFadden has provided to the Court, he was arrested on May 27, 2008 and sentenced on October 30, 2008. (See California Department of Corrections and Rehabilitation Calculation Worksheet.) He was paroled on February 19, 2011 and was transferred to the Philadelphia Federal Detention Center ("FDC") in connection with this case. (PSI ¶ 142.) McFadden has supplied us with documentation from the Federal Bureau of Prisons that shows that he has received credit against his sentence in this case for the time he served in the FDC beginning on February 20, 2011. (See Sentence Monitoring Computation Data as of May 17, 2013.) McFadden has presented no authority that supports his assertion that he is entitled to credit for 60 months of imprisonment in connection with his California sentence. Accordingly, McFadden has not established that we made an error at sentencing such that enforcement of the waiver would work a miscarriage of justice.

## IV. CONCLUSION

After considering McFadden's claim for relief, and the factors listed in Goodson, we conclude that McFadden's waiver of his right to collaterally attack his sentence is enforceable. Accordingly, we grant the Government's Motion to Dismiss and dismiss McFadden's § 2255 Motion. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.